UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES, INC. | § § § |
| V. | § § NO. 4:06-mc-00053 |
| M-I, LLC | § § § |

## DECLARATION OF JOHN KEVILLE IN SUPPORT OF M-I'S RESPONSE TO MUELLER'S MOTION TO QUASH, AND M-I'S MOTION TO COMPEL COMPLIANCE WITH ITS SUBPOENA

My name is John R. Keville. I am over eighteen years old, and I am fully competent to make this Declaration. I have knowledge of the matters stated in this Declaration based upon my work as counsel of record for this Civil Action. All statements of fact in this Declaration true and correct. All statements made on information and belief in this Declaration, which are noted herein when made, are believed to be true.

1. M-I, LLC is currently defending a patent infringement lawsuit brought by Halliburton Energy Services ("Halliburton") in the Eastern District of Texas. The lawsuit is styled *Halliburton Energy Services, Inc. v. M-I, LLC*; No. 6:05-CV-00155-LED, and is pending before the Honorable Leonard Davis in the U.S. District Court for the Eastern District of Texas. The lawsuit involves Halliburton's U.S. Patent No. 6,887,832 (the "'832 patent"). Critical issues in the lawsuit include the prior art, the patent prosecution process, the validity of the claims, and inventorship.

2. M-I believes that Heinz Mueller ("Mueller") has important knowledge of facts relevant to matters including validity or invalidity of the '832 patent. The '832 patent states on its face that it is a continuation-in-part of application no.

PCT/US00/35609 and a continuation-in-part of application no. PCT/US00/35610, meaning the '832 patent contains the same description of the invention plus additional matter. Mueller is a named inventor on both continuation-in-part applications.

3. Mueller is also a named inventor on sixteen patents listed on the face of the '832 patent as prior art, and of other prior art patents that are relevant to the validity or invalidity of the '832 patent.

4. M-I believes in good faith that Mueller has knowledge and documents relevant to issues such as the scope and content of the prior art (including his own); the novelty, if any, of the claimed invention over the prior art; his knowledge of and/or participation in the alleged inventions (or components of the alleged inventions) claimed in the '832 patent and its parents; his interactions with Halliburton on the subject matter of the patents and applications; and whether the inventorship of the '832 patent is correctly reflected on the patent.

5. M-I's understanding of the importance of Mueller to the underlying lawsuit is based in part upon information obtained from depositions of Halliburton employees who are named inventors on the '832 patent. However, Halliburton designated these entire deposition transcripts as confidential pursuant to Judge Davis' protective order. Our request to Halliburton is pending for permission to file with this Court such information relevant to the issues before this Court, which we do not deem to be confidential. If Halliburton does not agree, M-I can submit the relevant portions of the deposition transcripts for in camera inspection by this court.

6. Prior to serving Mueller with a subpoena, M-I tried to work constructively with Halliburton and its supplier Cognis to obtain discovery. First, M-I requested

documents from Halliburton, which resulted in the production of only a few documents. Then M-I served a subpoena upon the Cognis Corp., which we understand to be the U.S. subsidiary of Mueller's employer. Initially Cognis requested more time to respond to M-I's subpoena. However, Cognis then decided not to cooperate with M-I, and stated that M-I would have to obtain information in Germany via the Hague Convention.

7. Due to the lack of cooperation by Cognis Corp. in the discovery process, M-I presently has an enforcement action pending in the U.S. District Court for the Southern District of Ohio (No. 4:06-mc-00053), against Cognis Corp, which we commenced in early January 2006.

8. The position by Cognis that M-I must use the Hague Convention to obtain information is not acceptable to M-I because Judge Davis' scheduling order of July 28, 2005 has a claim construction discovery cut-off of February 24, 2006 (for a *Markman* hearing on May 12, 2006) and a general discovery cut-off of October 13, 2006. M-I does not believe that it can possibly obtain discovery through the Hague convention before the May 12, 2006 *Markman* hearing, and is concerned that the historically slow pace of discovery under the Hague Convention will not permit M-I to use the convention to obtain discovery from Mueller in Germany before the close of discovery.

9. In addition, we are informed that M-I may not be able to take an oral deposition of Mueller, and that M-I may be limited to submitting written deposition questions, if it is forced to take Mueller's deposition in Germany via the Hague Convention. Given the lack of cooperation by Halliburton, Halliburton's supplier Cognis, and Cognis's employee Mueller to date, M-I is concerned that Mueller's

responses to written questions, even if obtained before our discovery cut-off, may be inadequate and unresponsive.

10.  M-I served Mueller with a subpoena for a deposition in Houston due to our belief that Mueller regularly transacts business in person in Houston. This belief is based on the Declaration of M-I's James Friedheim attached to M-I's opposition and motion to compel, and upon deposition testimony obtained from a Halliburton employee concerning the frequency of Mueller's business trips to Houston. However, as noted above, Halliburton designated these entire deposition transcripts as confidential pursuant to Judge Davis' protective order. As also noted above, our request to Halliburton is pending for permission to file with this Court such information relevant to the issues before this Court, which we do not deem to be confidential.

11.  A true copy of M-I's subpoena is attached to Mueller's Motion to Quash. In an effort to reach an agreed deposition, prior to serving the subpoena, M-I wrote Mueller's counsel, with copy to Halliburton's counsel, that:

> We have scheduled his deposition for next Tuesday, February 14th, in an effort to provide reasonable notice to counsel and at the same time avoid any lengthy delays to travel plans Mr. Mueller may have. We are, however, agreeable to resetting the deposition date provided we have written assurance from a Cognis representative having authority to make agreements, before February 9, 2006, that Mr. Mueller will be made available for deposition before April 30, 2006, either in Houston or Germany.

In addition, prior to the scheduled deposition M-I's counsel conferred with Mueller's counsel but Mueller is not agreeable to appearing for a U.S. deposition, under any set of circumstances – even though he conducts business in Houston regularly and was properly served with a subpoena while conducting business in this district.

12. Mueller failed to appear for his deposition on the 14th as required by the subpoena, so M-I took a certificate of non-appearance after approximately a half hour had passed and neither the witness nor his counsel showed up for the deposition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 21, 2006.

_____
John R. Keville